**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | |
| CITY OF NEW BRITAIN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-31 (JCH) |
| | : | |
| v. | : | |
| | : | |
| LAW ENGINEERING AND | : | |
| ENVIRONMENTAL SERVICES, INC. | : | |
| ET AL., | : | JANUARY 13, 2012 |
| Defendants. | : | |
| | : | |

**RULING RE:**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 57)**

## I.    INTRODUCTION

Plaintiff City of New Britain ("New Britain") filed suit on January 8, 2010, against Law Engineering and Environmental Services, Inc. ("Law Engineering") and nine other companies that New Britain alleges are successors-in-interest to Law Engineering,[1] claiming negligence, negligent misrepresentation, innocent misrepresentation, unfair trade practices, and common law indemnity based on Law Engineering's environmental surveying and reporting on property that was later transferred to New Britain.  New Britain claims damages in excess of two million dollars through July 2010.

Defendants now move for summary judgment on all of New Britain's claims.

---

[1] The other defendants are Mactec, Inc. (f/k/a Management Analysis Company Colorado), Mactec Engineering and Consulting of Georgia, Inc., Mactec Engineering and Consulting, Inc. (f/k/a Harding Lawson Associates, Inc. and Harding ESE, Inc.), Mactec Development Corp., Mactec Environmental Consultants, Inc. (f/k/a Law Associates, Inc. and Law Environmental Consultants, Inc.), Law Environmental, Inc., Mactec Constructors, Inc., Law Companies Group, Inc. (f//k/a/ Law Engineering Inc. and Law Engineering Testing Co.), and Law Engineering, Inc.  See Am. Compl. (Doc. No. 32) ¶ 13.

II.    **BACKGROUND**[2]

This case concerns a parcel of property on and around Willow Street in New Britain, Connecticut.  The property includes the former site of the Willow Street Apartments ("the site").[3]  At some point, the site was owned by the United States Department of Housing and Urban Development ("HUD").  By late 1998, the owner of the apartments was in default of a mortgage held by HUD.  The Department of Municipal Development of New Britain proposed that HUD give the property to New Britain, which would demolish the housing and turn the site and surrounding property into a park.  See Defs.' Corrected Local Rule 56(a)(1) Statement (Doc. No. 72) ("Defs.' L.R. 56(a)(1) Stmt.") ¶ 5; Dep. of Kenneth Malinowski, Ex. A to Defs.' Mot. for Summ. J. (Doc. No. 57-1) at 35-39.

Former third-party defendant, A+E Collective, P.C. ("A+E"),[4] had a contract with HUD to perform services on some properties in which HUD held an interest, including the Willow Street Apartments.  In December 1998, A+E retained Law Engineering to perform a Phase I environmental investigation of the site of the Willow Street Apartments.  New Britain was not a party to the contract between A+E and Law Engineering, but it received at least part of Law and Engineering's Phase I report, which Law Engineering submitted to A+E on January 8, 1999.  See Pl.'s Local Rule 56(a)(2) Statement of Contested Facts ("Pl.'s L.R. 56(a)(2) Stmt. of Contested Facts") ¶ 24;

---

[2] Unless otherwise cited, the following facts are based upon the uncontested portions of the parties' Local Rule 56(a) Statements.

[3] The address of the Willow Street Apartments was 111 Putnam Street.  The address that the parties describe as the site of the apartments was 26-86 Willow Street.  The property at issue also includes 43 Willow Street.

[4] Defendants filed a Third Party Complaint against A+E.  See Third Party Compl. (Doc. No. 36). These claims were resolved, and the parties filed a Stipulation of Dismissal of the claims between defendants and A+E (Doc. No. 65).

Defs.' L.R. 56(a)(1) Stmt. ¶ 13.  New Britain provided further information about past uses of the site to A+E, which forwarded the information to Law Engineering.  Law Engineering performed further subsurface testing based on that information and issued a Limited Soil Assessment ("LSA") on November 24, 1999.

The LSA noted that its sampling sites were limited, and "elevated concentrations of solvents, petroleum, constituents, and metals (in all soil samples)."  Pl.'s 56(a)(2) Stmt. ¶ 20; Defs.' 56(a)(1) Stmt. ¶ 20.  The LSA also documented the presence of Trichloroethene and Petroleum Aromatic Hydrocarbons in some samples.  New Britain received a copy of the LSA.

Both the Phase I report and the LSA included Law Engineering's standard Secondary Client Agreement, which provided terms and conditions by which a third party could obtain the right to rely on those documents.  The Phase I report also included a Statement of Limitations, noting that the report was intended for the exclusive use of A+E, and should not be relied on by others without express written consent of Law Engineering.  New Britain did not sign the LSA Secondary Client Agreement.  Law Engineering has not performed any subsurface investigation of the Willow Street apartment site since 1999.

In 2003, New Britain acquired the site from HUD "as is," without any representations regarding environmental conditions.  See Pl.'s L.R. 56(a)(2) Stmt. ¶ 30 (admitting that "the property was conveyed by HUD without any representations regarding general environmental conditions that survived closing"); Defs.' L.R. 56(a)(1) Stmt. ¶ 30 (noting that the terms of the sale included the property "as is").  The contractor that New Britain hired in 2004 to demolish the Willow Street Apartments

agreed to remove the buildings in their entirety and to backfill the site.  See Defs.' L.R. 56(a)(1) Stmt. ¶ 32; Demolition Specifications, Ex. E to Aff. of Madhur Khanna (Doc. No. 60-5) at 28; Dep. of Kenneth Malinowski at 74.  The contractor left the foundations and basement slabs in place, filled the cellars with rubble from the buildings, and then covered the site with grading materials.  See Pl.'s L.R. 56(a)(1) Stmt. ¶ 34; Defs.' L.R. 56(a)(1) Stmt. ¶ 34.  In 2008, New Britain began construction on a park at the site and adjoining properties.  See Pl.'s L.R. 56(a)(1) Stmt. ¶ 41; Defs.' L.R. 56(a)(1) Stmt. ¶ 41. Contamination was discovered when excavation began, and New Britain commissioned an environmental investigation.  See Pl.'s L.R. 56(a)(1) Stmt. ¶ 42; Defs.' L.R. 56(a)(1) Stmt. ¶ 42.  The investigation revealed the rubble from the apartment buildings and other environmental contamination, and a Remedial Action Plan was issued.  See Pl.'s L.R. 56(a)(1) Stmt. ¶ 43-44; Defs.' L.R. 56(a)(1) Stmt. ¶ 43-44.

The parties agree that neither Law Engineering nor A+E ever conducted any operations that could have resulted in the release of the contaminants that caused New Britain's damages in this case.

## IV.    STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party

against whom summary judgment is sought.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  <u>United Transp. Union v. Nat'l R.R. Passenger Corp.</u>, 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  <u>Beyer v. County of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008) (quoting <u>Guilbert v. Gardner</u>, 480 F.3d 140, 145 (2d Cir. 2007)); <u>see also</u> <u>Havey v. Homebound Mortgage</u>, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere "'scintilla'" of evidence in order to defeat a motion for summary judgment) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

## V.   DISCUSSION

Law Engineering argues that summary judgment should be granted in its favor because all of New Britain's claims are time-barred under the applicable statutes of limitations.  It contends that the applicable statues of limitations are as follows: three years under section 52-584 of Connecticut General Statutes as to the negligence claim (Count One); three years under section 52-577 of Connecticut General Statutes as to the negligent misrepresentation claim (Count Two), the innocent misrepresentation claim (Count Three), and the common law indemnification claim (Count Five); and three

years under section 42-110g(f) of Connecticut General Statutes as to the Connecticut

Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110 et seq., ("CUTPA") claim (Count

Four).  See Defs.' Mem. of Law in Supp. of Mot. for Summ. J. (Doc. No. 58) ("Defs.'

Mem. in Supp.") at 9-10.

New Britain agrees that its fourth count, under CUTPA, is barred by the

applicable statute of limitations, see Pls.' Mem. in Opp'n [to] Defs.' Mot. for Summ. J.

(Doc. No. 68) ("Pls.' Opp'n") at 11 n.3, but contends that section 52-577c, entitled

"Limitation of Action for Damages Caused by Exposure to a Hazardous Chemical

Substance or Mixture or Hazardous Pollutant," applies to all four of its common law

claims.  See Pls.' Opp'n at 10.  The parties dispute whether New Britain has sufficiently

alleged that Law Engineering caused the contamination at issue.  Law Engineering

argues that section 52-577c cannot apply because New Britain does not allege that Law

Engineering caused the contamination.  See  Defs.' Mem. in Supp. at 11.  New Britain

argues that section 52-577c applies even when a defendant is not alleged to be the

direct cause of the contamination.  See Pl.'s Opp'n at 12.  Therefore, the initial question

is whether section 52-577c applies when a defendant is alleged to be a proximate

cause of plaintiff's exposure to contamination but not a proximate cause of the release

of the contaminant into the environment.

A.    Applicability of Section 52-577c

Section 52-577c provides, in part:

(a) For the purposes of this section: (1) "Environment" means any surface
water, ground water, drinking water supply, land surface or subsurface
strata or ambient air within the state or under the jurisdiction of the state;
(2) "exposure" means any contact, ingestion, inhalation or assimilation,
including irradiation; (3) "hazardous chemical substance or mixture"
means petroleum, a petroleum product or any chemical substance or

mixture for which there is a federal standard, including any law, requirement, tolerance, prohibition, action level or similar legal authority adopted by an agency pursuant to federal law, including any such standard or legal authority adopted by a state or local government pursuant to federal law, generally intended to prevent, reduce or mitigate the risk of a disease or class or type of diseases to an individual or individuals resulting from exposure to such chemical substance or mixture; (4) "hazardous pollutant" means any designated, specified or referenced chemical considered to be a "hazardous substance" under Section 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 USC 9601 (14); (5) "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment.

(b) Notwithstanding the provisions of sections 52-577 and 52-577a, no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered.

Conn. Gen. Stat. § 52-577c.

Limiting the applicability of section 52-577c to claims against defendants who are alleged to have caused both plaintiff's exposure to environmental contamination and the release of the contamination into the environment avoids treating "released into the environment" as surplusage.  "In construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous."  Bd. of Educ. v. State Bd. of Educ., 278 Conn. 326, 335 (2006) (internal citations omitted); see also Greco v. United Techs. Corp., 227 Conn. 337, 348-49 (2006) (declining to apply section 52-577c because applying it would deprive the first phrase of 52-577c(b) of import).  New Britain asks the court to apply section 52-577c to any "claim to recover damages caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant," effectively reading out "released into the environment."  The concept of release is not superfluous to proper construction of the

statute; release is one of the five terms in section 52-577c(b) that is defined in section 52-577c(a): "'release' means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." Conn. Gen. Stat. § 52-577c(a)(5).  For section 52-577c to apply, New Britain's claim must be one for damages involving the release of a hazardous substance or pollutant.

In addition to the language of the statute requiring "release," the court also considers the case law which provides that, for section 52-577c to apply, a claim must be based on actions that are a proximate cause of plaintiff's exposure to a contaminant, as well as a proximate cause of the release of the contaminant.  Section 52-577c applies to "damage caused by <u>exposure</u> to a hazardous chemical substance or mixture <u>released</u> into the environment." Conn. Gen. Stat. § 52-577c(b) (emphasis added). Interpreting this phrase, Connecticut courts have focused on the definition of "exposure" in section 52-577c(a) to determine the applicability of section 52-577c.  Where defendants have not caused plaintiffs' exposure to contamination, courts have declined to apply section 52-577c.  <u>See, e.g.</u>, <u>Pinto v. Tex. Instruments</u>, 72 F. Supp. 2d 9, 12 (D. Conn. 1999) (holding that section 52-577c could not apply to plaintiff's claim against a supplier of hard scrap metal because plaintiff's exposure to beryllium dust was caused only by the refining process, which was initiated, carried out by, and for the benefit of another party); <u>Sharp v. Wyatt, Inc.</u>, 31 Conn. App. 824, 854-55 (1993) (examining closely the statutory definition of exposure to find that an issue of fact existed as to whether injuries were caused by direct contact with the hazardous substance and covered by section 52-577c, or were instead caused by conditions that resulted from the

presence of the hazardous substance and were therefore not covered by section 52-577c).

Where, as here, plaintiffs make claims against defendants based on professional assessments made before the transfer of contaminated property but not for the contamination itself, courts have declined to apply section 52-577c.  For example, in Greyrock v. OBC Assocs., No. X08CV04402173S, 2010 WL 3448075 (Conn. Super. Aug. 2, 2010), defendants sold property that was contaminated at the time of sale.  See Greyrock, 2010 WL 3448075 at *16.  The plaintiffs made a claim for remediation costs under the Connecticut Hazardous Waste Transfer Act, Conn. Gen. Stat. § 22a-134 ("Transfer Act"), which imposes disclosure requirements on parties conveying property that has been the site of contamination or contamination-producing activities.  Id. at *10-11, *16-17.  The court held that section 52-577c was not applicable to the claim as a matter of law because plaintiffs did not claim "personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment. . . . There is no allegation of anything like [exposure, as defined by section 52-577(a)] in this case."  Id. at *17.  Similarly, in A.P. Dev. and Servs. Corp. v. St. John, No. CV 930129171, 1998 WL 83656 (Conn. Super. Feb. 20, 1998), property allegedly contaminated by petroleum was indirectly transferred from defendants to plaintiffs.  See A.P. Dev., 1998 WL 83656 at *1.  Id.  The court determined that section 52-577c did not apply to the case because petroleum was not among contaminants covered by section 52-577c at the time, and added that "the plaintiff's action is not based on personal injury or property damage caused by the exposure to a hazardous substance.  Rather, the plaintiff seeks damages for injuries

arising from a breach of a contract warranty, negligent misrepresentation, and a violation of CUTPA." Id.  In Hartt v. Schwartz, No. CV 920331912, 1993 WL 479806 (Conn. Super. Nov. 9, 1993), plaintiffs sued attorneys who represented them at a real estate closing for the cost of the property and of environmental remediation because the attorneys failed to ensure that the property was free of hazardous waste, and failed to advise the plaintiffs of the legal significance of hazardous waste.  Hartt, 1993 WL 479806 at *1.  The court determined, based on the allegations of the complaint, that section 52-577c was not applicable because "[p]laintiffs' complaint . . . does not seek to recover from these defendants for injuries to person or property; it seeks to recover from them for their alleged failure to do certain things which prudence would have required that they do." Id. at *2.

New Britain alleges that its damages are "a direct and proximate result of [Law Engineering's] breach of its professional obligations and duties, negligence, and carelessness in the performance of its investigations."  Am. Compl. (Doc. No. 32) ¶ 47. New Britain's claims against Law Engineering are for damages caused by Law Engineering's negligence and malpractice; New Britain's exposure to environmental contaminants serves only as a measure of the damages claimed.  New Britain's allegations against Law Engineering are for damages caused by negligence and breach of professional responsibility.  As in the cases discussed above, such claims are not within the purview of section 52-577c.

New Britain cites several cases that it claims show that section 52-577c "applies if the property damage is caused by an exposure to pollutants regardless of whether the party against who[m] damages [are] asserted was the direct cause of the pollution to the

property." Pl.'s Opp'n at 12-13 (citing Armotek Indus. v. Freedman, 790 F. Supp. 383 (D. Conn. 1992); KVL Corp. v. Holson Co., 2000 U.S. Dist. LEXIS 22955 (D. Conn. 2000)). However, these cases are consistent with the principles discussed above: that defendants' actions must have caused both the release of and plaintiffs' exposure to contamination in order for section 52-577c to apply. In other words, it is a necessary— but not a sufficient—condition of the application of section 52-577c that a defendant has either directly or indirectly caused exposure to contamination. Insofar as New Britain implies that these cases show courts applying section 52-577c to claims against defendants who are not alleged to be a cause of contamination, the court disagrees.

In Armotek, defendants were S. Freedman Electric ("SFE") and Seymour and Helene Freedman, who were officers and directors of SFE. SFE owned a corporation that operated a chrome-plating plant. Armotek, 790 F. Supp. at 384. SFE sold the operator corporation to the plaintiff corporation, warranting that the operator corporation was environmentally compliant. Id. Plaintiff later sued to recover money it spent assessing and remediating environmental contamination that it alleged had occurred while defendants owned the operator corporation. Id. at 385. Plaintiff alleged, inter alia, common law tortious harm to real estate and environment and negligence, and the parties agreed that section 52-577c applied to those claims. See id. at 385, 392. SFE was allegedly both a proximate cause of Armotek's exposure to its contamination (by its warranty), and a proximate cause of the release of the contamination. New Britain agrees that the court applied section 52-577c to claims against individuals who were not alleged to have caused contamination of the site. See Pl.'s Opp'n at 13. This is incorrect. The court applied section 52-577c to find time-barred claims against SFE, a

corporation legally responsible for the polluting entity, and Seymour Freedman, an officer and director of SFE who was responsible for its actions by virtue of his involvement in its management and operations.  See Armotek, 790 F. Supp. at 394 (noting that a corporation that owns and manages a polluting corporation can be liable for cleanup costs incurred by polluting corporation, and also that "corporate liability is not based simply upon whether a party is an officer, director or shareholder, but depends on the specific activities of a party, including the level of involvement in day-to-day business operations, and participation in decisions regarding disposal of hazardous waste").  The court found that summary judgment would have been granted on all claims against Helene Freedman regardless of the statute of limitations because of the lack of evidence that she had been sufficiently personally involved as an officer and director of SFE, for whose actions she was therefore not legally responsible.  See id.

Similarly, in KVL, the court applied section 52-577c to certain claims for damages that were a direct result of pollution for which defendants were responsible.  See KVL, 2000 U.S. Dist. LEXIS 22955 at *48-49 ("The contamination of the Property was the direct result of the practices and actions of the [defendant] Company.").  The two individual defendants in KVL were officers and directors of the corporate defendant and general partners in the partnership defendant.  Id. at *4, 6-7.  The individuals knew of and were personally involved in the activities that caused the contamination, and they knowingly misrepresented the environmental status of the property to induce plaintiff to purchase the contaminated property.  See id. at *79-80.  New Britain asserts that the KVL court applied section 52-577c to Transfer Act claims which were "not linked to the cause of contamination."  See Pl.'s Opp'n at 13.  To the contrary, all defendants were

legally linked to the cause of contamination, and furthermore, the court explicitly addressed this link by finding that the Transfer Act claims arose out of the same conduct or transaction as the earlier-made claims that concerned contamination.  See KVL, 2000 U.S. Dist. LEXIS 22955 at *156-160.

These cases provide no support for New Britain's claim that courts apply section 52-577c to claims against defendants who are not both a proximate cause of plaintiffs' exposure to contaminants and a proximate cause of the release of contaminants into the environment.  See Pl.'s Opp'n at 12.  New Britain does not allege that Law Engineering is responsible for any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment.  Rather, it alleges that it relied on Law Engineering's representations in purchasing the property, and that the torts alleged therefore caused New Britain to be exposed to the costs of investigation and remediation.  See Am. Compl. at 13-17. Based on the case law examined above and the language of the statute, the court finds that section 52-577c does not apply to New Britain's claims.

> B.   Applicable Statutes of Limitations

> > 1.   Count One: Negligence

New Britain claims that Law Engineering

> [N]egligently or carelessly performed the investigations at the Subject Property, including but not limited to by failing to perform such investigations in an environmentally professional manner, failing to perform its duties in accordance with applicable industry standards, failing to perform its work in a competent and workmanlike manner, failing to conduct its investigations in accordance with Connecticut Department of Environmental Protection standards . . . .

Am. Compl. 12.  Law Engineering argues that section 52-584 applies to this claim.  See

Defs.' Mem. in Supp. 9-10.  Section 52-584 provides, in part:

> No action to recover damages for injury to the person, or to real or personal property, caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . .

Conn. Gen. Stat. § 52-584.

New Britain admits that Law Engineering has not performed any subsurface

investigation of the subject property since 1999.  See Pl.'s L.R. 56(a)(2) Stmt. ¶ 27;

Defs.' L.R. 56(a)(1) ¶ 27.  The last written submission by Law Engineering recounted in

the parties' Local Rule 56 Statements is a letter dated March 27, 2000, sent by Law

Engineering to A+E.  See Defs.' L.R. 56(a)(1) Stmt. ¶ 24.  New Britain does not raise

any acts or omissions by Law Engineering following the March 27, 2000 letter.

Therefore, the latest date at which the statute of limitations could have begun to run is

March 27, 2000.  By the time this case was brought, in 2010, New Britain's negligence

claim was time barred under section 52-584 of Connecticut General Statutes.

> 2.      Counts Two and Three: Negligent and Innocent Misrepresentation

In Counts Two and Three, New Britain claims that Law Engineering is liable to it

for negligent misrepresentation and innocent misrepresentation.  See Am. Compl. at 14-

16.  Claims for innocent misrepresentation are limited by section 52-577, which

provides: "[n]o action founded upon a tort shall be brought but within three years from

the date of the act or omission complained of."  Conn. Gen Stat. § 52-577.  See Adcock

v. Remington Arms Co., Civ. No. B-89-345 (WWE), 1992 WL 363502 at *2 (D. Conn.

Sept. 15, 1992) (applying section 52-577 to claims for intentional misrepresentation and innocent misrepresentation).

Courts have applied either section 52-577 or section 52-584 to claims for negligent misrepresentation.  See Schwartz v. Blum, Shapiro & Co., No. X04CV2010080S, 2006 WL 1230054 at *2 (Conn. Super. Apr. 17, 2006) (applying Section 52-577 to a claim for negligent misrepresentation); Lombard v. Edward J. Peters, Jr., P.C., 79 Conn. App. 290, 295 (2003) (applying section 52-584 to a claim for negligent misrepresentation).  Section 52-577 is an occurrence statute: "the limitations period begins to run at the moment the act or omission complained of occurs," and the date that the injury occurred, and the plaintiff's discovery of the injury, are irrelevant to the limitations analysis.  See Bello v. Barden Corp., 180 F. Supp. 2d 300, 310 (D. Conn. 2002) (citing Fichera v. Mine Hill Corp., 207 Conn. 204, 212 (1988); Collum v. Chapin, 40 Conn. App. 449, 451 (1996)).  The repose portion of section 52-584 bars claims brought more than three years after the negligent act or omission "regardless of when a plaintiff discovers the proximate cause of his harm or any other essential element of a negligence cause of action."  Catz v. Rubenstein, 201 Conn. 39, 49-50 (1986).

As discussed above, the last date on which the statute of limitations could have begun to run on New Britain's claims against Law Engineering was in March 2000.  New Britain's innocent misrepresentation and negligent misrepresentation claims, brought almost ten years after that date, are therefore time-barred under both sections 52-577 and 52-584.

3.      Count Five: Indemnification

New Britain claims that it is entitled to be indemnified by Law Engineering for the injuries it has suffered from Law Engineering's negligence.  See Am. Compl. at 17.  Law Engineering argues that section 52-577 applies to New Britain's claim for common law indemnification.  See Defs.' Mem. in Supp. at 10.  "There is no single statute that establishes a uniform limitations period for all indemnity actions.  Which statute of limitations applies depends upon the nature of the underlying action that gives rise to the indemnity claim (i.e. tort three years; contract six years)." Casalini v. The Four D's, Inc., No. CV890103348S, 1992 WL 399807 at *2 (Conn. Super. Dec. 30, 1992) (citing Morrison v. Zenobia, 1 Conn. App. 7, 8 (1990)).  New Britain's claim for common law indemnity appears to arise from claims of negligence, and it would therefore be governed by Conn. Gen. Stat. § 52-584.  The court need not decide whether section 52-584 or section 52-577 applies, as the claim is time-barred under either statute.

VI.     **CONCLUSION**

For the reasons discussed above, Law Engineering's Motion for Summary Judgment (Doc. No. 57) is **GRANTED** as to all counts of the Amended Complaint.  The clerk is directed to close this case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 13th day of January, 2012.


_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge